432 So.2d 917 (1983)
Jerry BARNHILL, Plaintiff-Appellee,
v.
AMERICAN WELL SERVICE AND SALVAGE, INC., et al., Defendants-Appellants.
No. 82-554.
Court of Appeal of Louisiana, Third Circuit.
May 2, 1983.
Raleigh Newman, Lake Charles for plaintiff-appellee.
Raggio, Cappel, Chozen & Berniard, Charis M. Trahan, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, Geralyn P. Garvey, Woodley, Barnett, Cox, Williams & Fenet, Robert W. Fenet and Terry Thibodeaux, Plauche, Smith & Nieset, Michael J. McNulty, III, Lake Charles, for defendants-appellants.
Before DOMENGEAUX, FORET and CUTRER, JJ.
CUTRER, Judge.
This is an appeal from the granting of a motion for summary judgment which dismissed certain third party defendants in a tort suit. Dravo Utility Constructors, Inc. and Texas Brine Company were made third party defendants by American Well Service *918 and Salvage, Inc., in two tort suits filed by Jerry Barnhill (82-554) and the Estate of Blaine Williams (82-555) against American Well Service and Salvage, Inc. (American Well). The tort suits were consolidated for the summary judgment hearing.
American Well has appealed the judgments dismissing Dravo Utility Constructors, Inc. (Dravo) and Texas Brine Company (Texas Brine) in each suit. We affirm.
These suits are consolidated for appeal and, since the law and facts are common to both cases, our opinion in this suit is equally applicable to the companion case of Williams v. American Well Service and Salvage, Inc., 432 So.2d 921 (La.App. 3rd Cir.1983). However, we will render separate judgments in each case.
The facts of this case are as follows:
The Federal Government, through the Department of Energy (DOE), operates a Stategic Petroleum Reserve site at West Hackberry in Cameron Parish, Louisiana. Crude oil is stored in salt dome caverns at this site. In September 1978, a fire occurred at Well 6 of the West Hackberry salt dome. In order to "recertify" the cavern, certain repairs had to be made to wells and equipment at Cavern 6. The needed repairs included repairing strings of casing that had been inserted into the wells. It was necessary to remove this casing from the wells for inspection and testing.
Dravo had signed a contract with DOE to operate and maintain the oil storage site for four years. The contract required Dravo to provide:

"[A]ll necessary qualified personnel and services to perform preventative and remedial maintenance on DOE-owned facilities and equipment.... In situations requiring major repair or renovation the contractor shall obtain or provide necessary supplies and/or services to correct the situation.... The Contractor [Dravo] is responsible for the preservation of SPR [Strategic Petroleum Reserve] Caverns. This responsibility may be fulfilled by doing such things as maintaining certified pressures and running cement bond logs to ascertain casing condition, etc."

To fulfill its primary contract with DOE, Dravo entered into a sub-contract with Texas Brine for the inspection and maintenance of storage and brine disposal wells. The "Scope of Work" section of Dravo's contract with Texas Brine refers specifically to "removal of suspended strings" and "rerunning of new production tubing." Texas Brine was also required to submit to Dravo, as part of Texas Brine's billing procedure, specific costs breakdowns for, among other things, "Workovers." Texas Brine, as sub-contractor, had the authority to enter into its own subcontracts. The "General Provisions" section of the Dravo/Texas Brine contract states that "[t]he term `subcontracts' includes purchase orders under the contract."
To complete the repair work at Cavern 6 Texas Brine issued "purchase orders" to American Well, Benton Casing Service, Inc. (Benton) and others. The workover rig used on Well 6B, the accident site, was provided by American Well. Benton provided a casing crew, including plaintiffs, Barnhill and Williams, to pull the casing from Well 6B for inspection and to rerun either the inspected casing or new tubing as needed. Benton's employees, as per Texas Brine's purchase order, were to be directed by the Texas Brine representative in charge of the job.
On March 27, 1980, during the casing replacement process, a joint of casing being lifted for reinsertion into the hole, fell, striking Barnhill and Williams. As a result of this accident, Blaine Williams died and Terry Barnhill sustained serious personal injuries.
Barnhill and Williams' estate brought tort suits against American Well. American Well filed a third party action against Dravo and Texas Brine seeking indemnification. Both Dravo and Texas Brine filed motions for summary judgment alleging there was no genuine issue as to any material fact concerning them and that, as a matter of law, they were entitled to judgment *919 because of the tort immunity afforded to statutory employers pursuant to LSA-R.S. 23:1032 and 23:1061. The trial judge granted summary judgment in favor of Dravo and Texas Brine and American Well appealed. We affirm.
The only issue before this court is whether the granting of a summary judgment in favor of Dravo and Texas Brine was appropriate.
The Louisiana Supreme Court, in Chaisson v. Domingue, 372 So.2d 1225, 1227 (La. 1979), stated:

"It is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; * * * Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. * * * The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts. * * *" (Citations omitted.)
American Well bases its appeal on the contention that both Dravo and Texas Brine failed to meet their burden of showing that the work being done by Barnhill and Williams, at the time of their accident, was within the scope of Dravo's and Texas Brine's respective trades, businesses or occupations so as to establish statutory employer status under the workmen's compensation statute. Thus, according to American Well's theory, a material fact question is presented which can only be resolved by a trial on the merits. Dravo and Texas Brine, on the other hand, argue that it was not necessary that they show Barnhill and Williams were engaged in Dravo's and Texas Brine's respective trades, businesses or occupations but rather it was sufficient to show that both Dravo and Texas Brine had contracted to do the work and had sub-contracted the actual performance of the work. A resolution of those divergent theories will require the examination of the workmen's compensation statutes.
The basic "quid pro quo" of the workmen's compensation scheme involves employees giving up the right to sue their employers in tort in exchange for a guaranteed benefit under the statute. This proposition is reflected in LSA-R.S. 23:1032, which, in part, provides:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." (Emphasis added.)
The idea that someone other than the employee's direct employer may be liable for compensation benefits under this statute is recognized by the granting of tort immunity to "principals." The other side of the exchange, the liability of "principals," is found at LSA-R.S. 23:1061, which provides, in pertinent part:

"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any *920 part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; ...." (Emphasis added.)
The controversy in this case arises from different interpretations of the above statute.
American Well maintains that for a principal to be liable for worker's compensation, and thus immune from tort damages and any indemnification claims by alleged tortfeasors, the injured employee must have been engaged in the principal's own "trade, business or occupation" when the injury occurred. Dravo and Texas Brine point to the disjunctive "or" above and contend that a principal is immune from tort, and liable in worker's compensation, anytime the principal contracts to do any work (whether part of the principal's regular trade, business or occupation being immaterial) and then contracts with another party for the performance of the work. We conclude that the interpretation of Dravo and Texas Brine is correct.
In the case of Fultz v. McDowell, 344 So.2d 410 (La.App. 1st Cir.1977), the plaintiff was employed as a bricklayer for the construction of a home undertaken by the defendant-general contractor. As a result of injuries received while so employed, plaintiff brought a tort suit against the general contractor. Defendant's exception of no cause of action was sustained by the court which held as follows:

"[T]o exclude himself from LSA-R.S. 23:1061, plaintiff argues that he was engaged in `specialized labor' outside the usual business and trade of a general building contractor. However, we note that LSA-R.S. 23:1061 says compensation is due if the work is part of the principal's trade, business or occupation or is work which he had contracted to perform. Defendant had contracted to build the house; the bricklaying was a part of this. Therefore, the fact that plaintiff was engaged in specialized labor outside the usual business or trade of a general building contractor is irrelevant, even if true." (Emphasis added.)
In the case at hand, DOE had a prime contract with Dravo for the operation and maintenance of five storage wells. To accomplish this obligation Dravo entered into a subcontract with Texas Brine for the inspection and maintenance of the storage wells. Texas Brine entered into a contract (purchase order) with Benton to perform a part of Texas Brine's obligation. Benton was the employer of Blaine Williams and Jerry Barnhill who were assisting in the performing of Benton's obligation to Texas Brine.
The affidavits and other documents submitted fully support the trial judge's conclusion that Texas Brine's and Dravo's motion for summary judgment should be granted. The work that was being performed by Williams and Barnhill at the time of the accident was in furtherance of Benton's contractual obligation to Texas Brine. Benton's work was part of the contractual obligations which Texas Brine had with Dravo. Such work, in turn, was part of the contractual obligation existing between Dravo and DOE. This chain of contractual obligations extending from DOE through Dravo, Texas Brine and Benton subjects these contractors to liability for workmen's compensation to Benton's employees and they are immune from tort liability. LSA-R.S. 23:1032 and R.S. 23:1061, supra. It is immaterial, under these circumstances, whether the work being done by the injured Benton employees, at the time of the accident, was part of the trade, business or occupation of Dravo.
There is no issue of material fact as to this position. The judgment of the trial court will be affirmed.
For the reasons assigned, the judgment of the trial court is affirmed. All costs are to be borne by American Well Service and Salvage, Inc., defendant-appellant.
AFFIRMED.