578 So.2d 242 (1991)
Sandra B. MATHEW, Individually, and as Natural Tutrix of the Minors, Yvette Michelle Mathew and Shawn Dale Mathew, Plaintiff-Appellant,
v.
AETNA CASUALTY AND SURETY COMPANY, the Port City Group, Inc., and B & G Crane Service, Inc., d/b/a Sun Erection Company, Defendants-Appellees, and
Corbesco, Inc., Boeing Louisiana, Inc. d/b/a Boeing Military Airplane Company and H.A. Lott, Inc., Defendants,
Commercial Union Insurance Company, Intervenor-Appellant.
No. 89-1081.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
*243 McClain & Morgan, Robert E. Morgan, Lake Charles, for plaintiff-appellant.
Sutherland & Juge, Brian J. Miles, New Orleans, for intervenor-appellant.
Raggio, Cappel, Chozen & Berniard, Christopher M. Trahan, Lake Charles, for Aetna Cas. and Sur. Co.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert S. Dampf, Lake Charles, for B & G Crane Service.
Hall, Lestage & Landreneau, David R. Lestage, Deridder, for H.A. Lott, Inc.
Plauche, Smith & Nieset, Jeffrey M. Cole, Lake Charles, for Corbesco, Inc.
Robert L. Wyatt, Asst. Dist. Atty., Lake Charles, for Boeing Military Airplane Co.
Before DOMENGEAUX, C.J., and DOUCET and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
Roger Dale Mathew was killed in a workrelated accident on April 2, 1987. At the time of his death, he was employed as an ironworker for Corbesco, Inc., a sub-subcontractor on a job to build five aircraft hangars at Chennault Industrial Airpark in Lake Charles.
His widow, Sandra B. Mathew, filed a wrongful death suit on behalf of herself and her minor children against, inter alia, The Port City Group, Inc. (Port City), the general contractor on the job, and B & G Crane Service, Inc., d/b/a Sun Erection Company (B & G), the subcontractor who had contracted with her husband's immediate employer.[1] The trial court granted motions for summary judgment filed by Port City and B & G after concluding these parties were the decedent's statutory employers. We affirm.

FACTS
On October 10, 1986, Chennault Industrial Airpark, as owner, contracted with Port City for the construction of five hangars to accommodate Boeing aircraft. As general contractor, Port City entered into a subcontract with B & G to perform part of the work required by the Chennault contract. B & G, in turn, contracted with Corbesco, Inc. to install metal roofing, siding and accessories for the hangars.
Just prior to the fatal accident, Mathew and two other Corbesco employees were shaking out a 6' × 90' sheet of insulation on the roof of one of the hangars. Mathew lost his balance and fell 65 feet to his death when a gust of wind caught the insulation sheet. The failure to provide a safety net was the primary allegation in the negligence and intentional tort suit which followed Mathew's death.
On summary judgment, the trial judge found Port City and B & G were immune from tort liability under the "two-contract" statutory employer defense. In the same proceeding, the judge also dismissed plaintiff's intentional tort claim against these parties.

STATUTORY EMPLOYER
The statutory employer defense to tort liability arises from the language of *244 La.R.S. 23:1061, read in conjunction with La.R.S. 23:1032. Under 23:1032, an injured employee's exclusive remedy against his employer is in worker's compensation. Under 23:1061, a principal may become a statutory employer in either of two ways: (1) by contracting with another for the execution of work which is part of the principal's trade, business or occupation; or (2) by contracting with another to perform all or any part of the work which the principal is contractually obligated to perform. The latter situation is commonly referred to as the two-contract statutory employment defense to tort actions. Rosier v. H.A. Lott, Inc., 563 So.2d 1321 (La.App.3d Cir.1990), writ denied, 568 So.2d 1058 (La.1990).[2]
The Supreme Court has illustrated the two-contract situation in a footnote in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986):
[A]n owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general". Under this contractual relationship, the contract work of the "sub" has been held in decisions of the intermediate courts to be automatically within the trade business or occupation of the "general". (Citations omitted).
488 So.2d at 936, n. 3.
To prevail on summary judgment, the party asserting the two-contract defense must provide evidence of a contractual relationship that fits the two-contract situation, i.e., where the principal has contracted to do work and then contracts with another to do all or part of that work. See Duvalle v. Lake Kennilworth, Inc., 396 So.2d 1268 (La.1981); Burleigh v. South Louisiana Contractors, 525 So.2d 87 (La.App.3d Cir. 1988).
Plaintiff relies upon Duvalle and Burleigh in arguing Port City is not entitled to summary judgment because it failed to introduce (1) certain "specifications" to its contract with the owner, Chennault Industrial Airpark, and (2) a joint venture agreement between Port City and H.A. Lott, Inc. which allegedly designated Lott as the supervising party on this job.
We find no merit to this contention. The defendants in Duvalle and Burleigh presented no documentary evidence to support their claims of an alleged contractual relationship with the plaintiffs' immediate employer. In contrast, the record before us contains copies of all three contracts which sufficiently identify the parties, their relationships and the work involved.
Port City introduced a copy of the general contract it executed with Chennault for the construction of five buildings, labelled as "A001, B001, C001, E001 & F001." Port City also introduced a copy of its subcontract with Sun Erection Company (B & G) which refers to the Chennault contract and states "the parties hereto desire to contract with reference to a a part of said work...." Also in the record is a copy of the sub-subcontract between B & G and Corbesco, Inc., which lists the five buildings mentioned in the general contract. In paragraph 13 of her petition, the plaintiff specifically alleges that the work being performed by Corbesco, Inc. at the time of the decedent's accident was included in the work contracted by Port City and Chennault.
After reviewing the record, we find the documentary evidence and the allegations in plaintiff's petition preclude any genuine issue of material fact that Mathew was engaged in work contemplated by the general contract at the time of his death. The omitted "specifications" are unnecessary to this finding, as is the joint venture agreement *245 between Port City and Lott. The joint venture agreement may be necessary should Lott raise a statutory employment defense, but that issue is not before us at this time.
Plaintiff also argues B & G is not entitled to summary judgment because it failed to establish that the subcontract between B & G and Port City was executed prior to the sub-subcontract between B & G and Corbesco, Inc.
Plaintiff cites Short v. Mobil Oil Corp., 544 So.2d 572 (La.App. 1st Cir.1989) and Davis v. Material Delivery Service, Inc., 506 So.2d 1243 (La.App. 1st Cir.1987), neither of which involved a construction project, for the proposition that the principal must prove that he entered into the general contract before he entered into the subcontract with plaintiff's employer.
After reviewing the record, we find plaintiff is precluded from making this argument on appeal because she stipulated to the validity of the two-contract defense as to B & G at the hearing on motion for summary judgment. At the hearing, plaintiff's counsel stated, "Now, I've just admitted that I don't have an argument as to the next motion, B & G d/b/a Sun Erection, as to the two-contract theory." Later in the hearing, the following colloquy occurred:
"MR. VEAZEY: Well, can we stipulate that we have a two-contract situation in this so I don't have to introduce all that?
"MR. MORGAN: We cannot stipulate, but Iit's argument.
"MR. VEAZEY: Okay.
"THE COURT: Well, no, it's more than argument. He wants to know whether or not he's going to be required to introduce those contracts into evidence.
"MR. VEAZEY: To go through and it doesn't matter. I don't mind going through it. It will just take a little time.
"THE COURT: Well, go ahead with it.
"MR. VEAZEY: I guess first of all, I'd like to go ahead and for purposes of my motion, too, I'd like to introduce, for the intent issue, Mr. Veillion's affidavitand we can make that as B & G No. 1, as well as whatever number it is for Portand also Mr. Dark's affidavit for the same purposes as introduced by Port.
"MR. MORGAN: Pardon me, Your Honor. May I confer with counsel one minute?
"THE COURT: Yes, sir.
(Discussion off the record between counsel.)
"MR. MORGAN: Your Honor, I will stipulate that as to the two-contract theory that B & G d/b/a Sun Erection is a statutory employer because of the twocontract theory, which would obviate the
"THE COURT: All right, the offerings."
A stipulation has the effect of binding all the parties and the court. Since an attorney speaks for his or her client in court, "any statement made by the attorney is held to be an admission by the client." Dolsen v. City of New Orleans, 559 So.2d 50 (La.App. 4th Cir.1990), quoting Singleton v. Bunge Corp., 364 So.2d 1321, 1325 (La.App. 4th Cir.1978).
The record establishes that counsel for B & G relied upon the stipulation and did not introduce evidence pertaining to B & G's two-contract defense. The correctness of a judicial admission cannot later be denied when the party which the admission benefited relied on it to its detriment. Dolsen supra. We therefore decline to address the merits of this assignment of error.[3]

INTENTIONAL TORT
Plaintiff next argues the trial judge erred in dismissing her intentional tort claim against Port City and B & G.
In her petition, plaintiff alleged the defendants knew Mathew's death was substantially certain because they were aware of OSHA regulations which required safety nets for work performed 25 feet above the ground, because safety nets were intentionally *246 excluded from all contracts to save costs, and because they were aware of particularly gusty winds on the date of the accident.
In support of its motion, Port City introduced the affidavit of Gene Dark, its president, who stated that at no time during the contract negotiations was there any discussion of safety nets, that Corbesco, Inc. exercised direct control over its employees, that he does not know if OSHA regulations require safety nets for the work Mathew was performing, and that he did not intend the injury or death of Mathew. At the hearing, plaintiff filed no affidavit to counter Dark's statement.
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Supreme Court defined "intentional act" as used in La.R.S. 23:1032 as follows:
[T]he meaning of intent is if the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent, has reference to the consequences of an act rather than to the act itself.
397 So.2d at 481.
The fact that an employer or its employees should have known that an act could cause harm to the plaintiff has been held insufficient to prove an intentional tort. Wong v. Stanley, 505 So.2d 109 (La.App. 4th Cir.1987), writ denied, 506 So.2d 1226 (La.1987). An employer's failure to provide even specifically requested safety equipment has been held not to be an intentional tort for the purposes of the exception to the worker's compensation exclusivity rule. Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4th Cir.1982), writ denied, 415 So.2d 953 (La.1982). Even proof of the fact that a worker was ordered by his employer to work in an unsafe place has been considered insufficient to prove an intentional tort. Redding v. Essex Crane Rental Corp., 500 So.2d 880 (La. App. 1st Cir.1986), writ denied, 501 So.2d 774 (La.1987).
Applying the above principles, we find no error in the trial court's determination that appellees lacked the requisite "intent" to injure Mathew. Dark's unrebutted affidavit establishes that neither Port City nor B & G had any control over Corbesco, Inc.'s employees or the conditions under which they worked and negated plaintiff's allegations that safety nets were "intentionally" not provided.
Where an affidavit filed in a motion for summary judgment negates an allegation of intentional tort, the plaintiff then has the burden to counter by presenting conflicting evidence which would tend to raise an issue as to the defendant's true intentions. Fabre v. Kaiser Aluminum, 499 So.2d 1239 (La.App. 4th Cir.1986). Plaintiff did not meet this burden.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Sandra B. Mathew, and intervenor-appellant, Commercial Union Insurance Company.
AFFIRMED.
NOTES
[1] Also named as defendants were Corbesco, Inc., Boeing Louisiana, Inc., d/b/a Boeing Military Airplane Company and H.A. Lott, Inc.
[2] In Rosier we affirmed summary judgment in favor of Port City, the general contractor herein, after an accident on the same construction site. The distinction between Rosier and the instant case is that Mathew was an employee of a sub-subcontractor rather than a subcontractor. The two-contract defense applies to employees of sub-subcontractors. Crochet v. Westminster City Center Properties, 572 So.2d 720 (La.App. 4th Cir.1990); Beddingfield v. Standard Construction Co., 560 So.2d 490 (La.App. 1st Cir. 1990); Albin v. Red Stick Construction Co., 509 So.2d 110 (La.App. 1st Cir.1987); Barnhill v. American Well Service and Salvage, Inc., 432 So.2d 917 (La.App. 3d Cir.1983).
[3] Belatedly, appellant now waives this assignment of error, acknowledging the stipulation in the record.