605 So.2d 610 (1992)
Opal L. HARRIS, Plaintiff-Appellant,
v.
WEST CARROLL PARISH SCHOOL BOARD, Defendant-Appellee.
No. 23764-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1992.
Rehearing Denied September 17, 1992.
Writ Denied December 21, 1992.
*611 Kidd & Culpepper by Paul Henry Kidd, Monroe, for plaintiff-appellant.
Rankin, Yeldell, Herring & Katz by Richard A. Bailly, Bastrop, for defendant-appellee.
Before MARVIN, SEXTON and STEWART, JJ.
*612 STEWART, Judge.
Opal Harris (Harris), plaintiff-appellant, appeals from an adverse judgment in favor of West Carroll Parish School Board (School Board), defendant-appellee. Harris sued the Board to be reinstated to her employment as a food service technician and compensated for her lost time, salary, and benefits with interest plus costs incurred in instituting this proceeding. The trial court ruled in favor of the School Board and dismissed Harris' action. We affirm.

FACTS
Harris was a full-time, nontenured, food service technician at Goodwill Elementary School for approximately six years. On October 28, 1988, Harris was involved in a cafeteria confrontation with the husband of the cafeteria manager. The incident involved a dispute over placement of the chairs in the cafeteria. The incident was referred to the principal, Mr. Butler, who then attempted to resolve the cafeteria personnel problem through informal procedures.
On October 31, 1988, a meeting was held at the school between Butler, Harris, Mrs. Posey (the cafeteria manager), and Mrs. Martin (the school system's supervisor of cafeterias). Following discussions aimed at resolving the problems, Harris openly criticized the cafeteria manager and her family, refused to accept the principal's report of the initial incident of October 28, 1988, and left the school. Thereafter, Mr. Butler recommended to the Superintendent of Schools that Harris be dismissed for insubordination and failure to cooperate with him in resolving the problem in the cafeteria. On January 3, 1989, the West Carroll Parish School Board voted unanimously to dismiss Harris as a food service technician.
On December 29, 1989, Harris filed suit against the School Board to be reinstated in her position. Following the denials of exceptions filed by the School Board, the issue was joined and the case was tried on May 20, 1991 by joint stipulation of counsel. No testimony was elicited at the trial and the case was submitted for decision to the trial court. On July 17, 1991, the trial judge rendered an oral decision in open court in favor of the School Board. On July 23, 1991, judgment was signed and Harris' action was dismissed.
On September 13, 1991, through new counsel, Harris filed an untimely motion for new trial, which was denied. Harris now appeals from the July 23, 1991 judgment.

ASSIGNMENT OF ERROR NOS. 1 and 2
Appellant contends that the trial court erred in failing either to conduct a trial or alternatively to require stipulation of counsel as to the evidence to be considered in lieu of actual testimony and documents formally presented.
Appellant, in her second assignment of error, contends that the trial court erred in finding that there was admissible evidence adduced, that there was any stipulation of counsel, that there were any post-trial memoranda filed by counsel, and that the trial court orally assigned any reasons for judgment in open court on July 15, 1991. The gist of appellant's arguments is to complain about the manner in which the case was handled at the trial court. Both these assignments are without merit.
The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of gross abuse of discretion that appellate courts have intervened. LSA-C.C.P. Art. 1631; Sullivan v. Welch, 328 So.2d 731 (La.App. 3d Cir.1976). Home Insurance Co. of Illinois v. National Tea Co., 577 So.2d 65 (La.App. 1st Cir.1990), writ granted in part, 580 So.2d 364 and 580 So.2d 365, affirmed in part, reversed in part, 588 So.2d 361 (La.1991).
The decision to hold open or reopen a case for the production of additional evidence rests within the discretion of the trial judge which decision will not be disturbed on appeal unless manifestly erroneous. LSA-C.C.P. Art. 1631 and 1632; Harrison v. South Central Bell Telephone Co., 390 So.2d 219 (La.App. 3d Cir.1980), writ denied, 396 So.2d 900 (La.1981).
*613 A stipulation has the effect of binding all parties and the court. Mathew v. Aetna Casualty and Surety Co., 578 So.2d 242, 245 (La.App. 3d Cir.1991).
In our review of the record, we find that the minute entry indicates a trial was held on May 20, 1991. The minute entry further reflects that counsel for the School Board and Harris[1] were present and jointly stipulated that the case be submitted to the court on documentary evidence. The trial transcript indicates that the School Board introduced Exhibits D-1 through D-20 in open court on May 20, 1991. The case was left open to allow plaintiff time to submit her documents in support of her case. Harris submitted her documents to the trial judge on May 24, 1991 as shown by a transmittal letter of same date from her counsel to the judge. The letter concluded by stating "hopefully after you review all documentations you will render Mrs. Harris a favorable decision."
The trial transcript indicates no objections were made by either side regarding the admission of evidence or to the joint stipulation that the matter be submitted on documentary evidence. The failure to make contemporaneous objection, waives the right to complaint on appeal. State v. Keltner, 542 So.2d 42 (La.App.2d Cir.1989), writ denied, 548 So.2d 1228 (La.1989).
While the record could be clearer and it is a far better practice to have stipulations recorded in the transcript to avoid ambiguity, we can conclude from the total trial record that these parties agreed to present the case to the court for decision in the foregoing manner.
The trial judge is given great discretion in the manner in which the proceedings before him are conducted so that trials may proceed orderly and expeditiously. We have carefully reviewed the entire record and cannot say that the trial judge grossly abused his discretion. These assignments are without merit.

ASSIGNMENT OF ERROR NO. 3
Appellant contends that the trial court erred in rendering judgment in favor of the West Carroll Parish School Board, in finding that the board followed its own procedures and written policy for termination of a nontenured employee. This assignment is without merit.
The scope of our appellate review is limited to the question of whether the trial judge's determination is manifestly erroneous. Is it supported by the record? Myres v. Orleans Parish School Board, 423 So.2d 1303 (La.App. 4th Cir.1983), writ denied, 430 So.2d 657 (La.1983).
The Louisiana Constitution and legislature entrust the administration of the school system to the parish school boards and not to the courts. The School Board is vested with broad discretion in the administration of the school system, nevertheless, due process requires judicial review to ensure that the school boards do not abuse this discretion. But that review is limited, and where there is a rational basis, which is supported by substantial evidence for the school board's discretionary determination, the courts cannot and should not substitute their judgment for that of the school board. Myres, supra; see also, Chantlin v. Acadia Parish School Board, 100 So.2d 908 (La.App. 1st Cir.1958); Baker v. St. James Parish School Board, 584 So.2d 369 (La. App. 5th Cir.1991), writ denied, 588 So.2d 1118 (La.1991).
In 1987, the West Carroll Parish School Board adopted a policy for terminating nontenured employees pursuant to LSA-R.S. 17:81.5[2]. The policy requires *614 the School Board to use the following procedure for the dismissal of nontenured employees:
(1) The employee's immediate supervisor, or other person recommending his dismissal shall discuss the reasons therefor with the principal of the school where the employer works.
(2) If the principal or department head feels that dismissal is appropriate, then he shall make a written recommendation to the superintendent or his designee outlining the reasons for the recommendation. The employee shall be provided a copy of each recommendation.
(3) The superintendent or his designee shall thereafter conduct a conference with the principal, or department head, the employee, and the employee's immediate supervisor. Those recommending the dismissal of the employee shall be given the opportunity to rebut those reasons and/or to explain his position.
(4) If, after considering the information presented in the conference and any other information considered important, the superintendent or his designee feels that dismissal is appropriate, then the employee shall be advised of the staff-level determination and shall be given the opportunity to resign and/or retire.
(5) If the employee does not exercise his opportunity to resign and/or retire, then the superintendent or his designee shall make a written recommendation of dismissal to the school board. The recommendation shall outline the reasons therefor, and a copy of it shall be provided to the employee.
(6) The school board will be asked to act upon the recommended dismissal at the next meeting following receipt of such written recommendation.
(7) A nontenured employee who has been recommended to the board for dismissal shall not be entitled to a hearing before the board, unless a majority of the members vote to afford one.
In our review of the record, we find compliance with Steps 1 and 2. By letter dated November 2, 1988, the principal of the school where Harris worked made a written recommendation to the superintendent outlining the reasons for the recommendation of dismissal. In the letter, the principal provided a detailed narrative of what transpired on October 31, 1988 which lead him to find just cause to recommend Harris be terminated. During a conference on October 31, 1988 involving Harris, Mrs. Martin (the cafeteria supervisor), Mrs. Posey (the cafeteria manager), and the principal, Harris loudly stated that "all the Posey family had ever done was to live off other people." The principal characterized this incident as a "gross insubordination." (Exhibit D-4)
The School Board also complied with Step 3. A conference regarding Harris' dismissal was held on November 29, 1988 and Harris was given notice of the conference as evidenced by certified letter dated November 17, 1988. The letter informed Harris that the principal recommended her dismissal for insubordination and failing to cooperate with the principal of the school in the resolution of the problem in the cafeteria. (Exhibit D-5)
In brief, Harris conceded that the School Board followed Step 4. On November 29, 1988, following the conference, Mr. Kay, the superintendent, sent a certified letter to Harris confirming her refusal to resign after having been afforded an opportunity to do so and his intent to pursue the charge with the School Board for further action. (Exhibit D-9)
With regard to Step 5, the record contains no evidence that the superintendent made a written recommendation of dismissal to the School Board outlining the reason for dismissal, nor that Harris was provided a copy of the required written recommendation. However, Harris' dismissal was considered at the School Board's regular meeting on December 6, 1988 as part of its circularized agenda.
Upon review of Exhibits D-10 and D-14, the School Board's agenda, we can conclude, *615 that the superintendent initiated some formal communication to the School Board relative to his proposed dismissal of Harris. Though the record is devoid of evidence that Harris received a copy of the superintendent's recommendation, we do not find that omission to be fatal in this case.
It is clear from the certified letter sent to Harris on November 29, 1988 and the conference held that date that Harris was well aware of the superintendent's intent to pursue the charges for further action by the School Board and that such actions could result in her dismissal. Because we find that Harris had actual knowledge that the charges would be presented to the School Board by the superintendent, no prejudice was suffered by her in not receiving a copy of a written recommendation to that effect. This conclusion is buttressed by the fact that Harris did receive written notice of the January 3, 1989 hearing date immediately following the School Board's December 9, 1989 meeting. The notice informed her that the hearing would concern the dismissal charges levied against her as a food service technician at Goodwill Elementary School and that she had a right to counsel or representation of her choice in addition to an ability to request a private or open session. Based on the totality of the evidence, we conclude that the School Board sufficiently complied with Step 5.
Step 6 was complied with. The School Board considered the charges against Harris at its meeting on December 6, 1988. (Exhibit D-11) At the December 6, 1988 meeting of the School Board, Mr. Jones made a motion which was seconded by Mr. Crosby, approving the charges recommending dismissal of Harris as a food service technician at Goodwill Elementary School, for being insubordinate and refusing to cooperate with the principal. Harris was suspended with pay until a hearing could be scheduled. (Exhibit D-11)
The School Board sent a certified letter, dated December 7, 1988, to Harris' address, but it was returned because it was addressed to Christine Harris rather than Opal Harris. (Exhibit D-12) Another certified letter was sent to Harris on December 19, 1988 from Mr. Wactor, President of the School Board, which informed Harris that a hearing concerning the dismissal charge levied against her would be held on January 3, 1989. The letter also informed Harris of her right to counsel or representation. (Exhibit D-13)
Step 7 was complied with. On January 3, 1989, the School Board convened and Harris attended the hearing without counsel. After hearing the testimony of Harris, Mrs. Martin (Harris' immediate supervisor), Mrs. Paxton (a cafeteria employee), Mrs. Posey (the cafeteria manager), and the principal, the School Board, voted unanimously to dismiss Harris for insubordination.
After our review of the record, we conclude that the School Board substantially complied with all the procedures for the dismissal of a nontenured employee and the charge of insubordination by the principal of Goodwill Elementary School is supported by the evidence. We agree with the trial court that the defendant, School Board, was not arbitrary or unreasonable, and it did not abuse its discretion in dismissing Harris.
Appellant contends further that the trial court erred in holding that the School Board had just cause for her dismissal because the initial charge had been resolved in a quasi-judicial forum. She reasons that since her unemployment compensation hearing resulted in a finding of no misconduct, the trial judge, in the instant case, was precluded from finding just cause. We disagree.
Conduct which may give an employer just cause to terminate may not be sufficient to amount to misconduct which would disqualify the claimant from receiving unemployment compensation benefits. Atkins v. Doyal, 274 So.2d 438 (La.App. 1st Cir.1973). Misconduct sufficient to deny unemployment compensation and just cause needed to terminate a nontenured employee are determined by different standards.
*616 In the instant case, the record indicates that both the principal and the superintendent found just cause to recommend dismissal of Harris, based upon her insubordinate attitude which created negative tension in the cafeteria. Their conclusions are supported by the evidence of Harris' behavior on October 28, and October 31, 1988. This chain of events began with a dispute over chair placement in the cafeteria. Thereafter, Harris' failure to cooperate during the principal's October 31, 1988 attempt to resolve the matter, as emphasized by Harris' outburst regarding her supervisor, was the proverbial "straw that broke the camel's back." Given the broad discretion afforded school boards in the administration of their systems, we find that the trial judge's determination that just cause existed for Harris' dismissal is not manifestly erroneous.
Finally, appellant contends that the action of the School Board should be set aside because she was deprived of her rights under the due process of law clauses of the state and federal constitutions. She argues that even though the School Board is not required to grant her a hearing as a nontenured employee, once it chose to do so, that hearing must have encompassed all of the elements of a full due process proceeding. Appellant cites no legal authority for her position.
As a nontenured employee, Harris had no state or federally protected property interest in continued employment. LSA-R.S. 17:82; Winston v. Orleans Parish School Board, 545 So.2d 1174 (La.App. 4th Cir.1989), writ denied, 550 So.2d 631 (La.1989); Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1103-04 (La. 1988); Pechon v. National Corp. Service, Inc., 234 La. 397, 100 So.2d 213 (1958). The only rights to which Harris was entitled were those set forth in the procedures promulgated by the West Carroll Parish School Board previously discussed in this opinion.
For the reasons previously stated, we find that the School Board substantially complied with the requirements of its promulgated rules, thus Harris was not deprived of any rights pursuant to the due process of law clauses of either the state or federal constitutions. This assignment has no merit.

CONCLUSION
For the foregoing reasons, we affirm the trial court judgment. Costs of this appeal are assessed to appellant.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, LINDSAY, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] The appellate counsel for Harris is not the same attorney employed at the trial level.
[2] LSA-R.S. 17:81.5 provides as follows:

School employees; procedure for dismissal
Not later than January 1, 1988, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force, as provided for in R.S. 17:81.4. The school board shall provide a procedure by which any employee, whose dismissal is governed by this Section, may participate in the development of the rules and policies. Such rules and policies shall be made available for public inspection within ten days after they are finally adopted. Added by Acts 1987, No. 631, § 1.