FOIL, Judge.
Plaintiff Olive Morgan appeals the judgment of the trial court which dismissed her claims against the Livingston Parish School Board. Ms. Morgan, a tenured bus driver, filed a petition for declaratory and injunc-tive relief regarding the School Board’s transportation policy, which was adopted in 1987. This policy required Ms. Morgan to purchase her own bus in order to continue her route once the parish-owned bus she was initially provided was condemned. The trial judge found that there was no violation of tenure rights or reduction in salary effected by the policy, and that the School Board was acting “within its legal bounds” in requiring the purchase of a bus by Ms. Morgan and any other drivers in her situation. We affirm his decision for the reasons hereinafter assigned.
On November 5, 1987, the members of the Livingston Parish School Board adopted a new transportation policy which basically provided for a gradual change from parish-owned buses to privately-owned buses. The provisions relative to this appeal are as follows:
A. No buses shall be purchased by the Livingston Parish School Board for new routes or for replacement of worn-out equipment. When the cost of repairs exceeds 50% of the value of a bus it shall be condemned and shall not be replaced by the Board. This determination shall be made by the maintenance personnel and with an appraisal if necessary.
B. When any bus is condemned, it shall be the responsibility of the driver to pur *177 chase a replacement bus if he wishes to maintain the route.
[[Image here]]
H. Equipment on Special Education buses such as seat belts, wheel chair securing devices and lifts will be maintained by the Livingston Parish School Board whether or not the buses are publicly or privately owned.
Drivers eligible for retirement within three years of the effective date of the new transportation policy were specifically exempted; furthermore, the School Board was to “keep and maintain spare buses” to be available in case of emergency or breakdown at a cost of $30.00 per day plus fuel, for a maximum of 10 days except for extreme emergencies. Drivers of privately owned buses would be expected to purchase their own insurance and gasoline and to pay for repairs and maintenance of their buses.
The bus driven by plaintiff was an 18-foot, 35 passenger bus with specialized equipment for handicapped children. It was stipulated that Ms. Morgan’s one-way mileage was 18.4 miles, and that her base salary was $8,854.08 per year. It was further stipulated that she received expense money in the amount of $4,479.11 per year, based on her mileage, pursuant to LSA-R.S. 17:497.
In October of 1988, plaintiff received a letter from the supervisor of transportation for the School Board, David W. Jones, Jr., informing her that her bus had been condemned and that she would be required to purchase another one if she wished to maintain her route. It is uncontested that the estimated cost of repairs to plaintiffs assigned bus exceeded fifty percent of its value. When she refused to purchase another bus, charges of willful neglect of duty were brought against Ms. Morgan. Both parties stipulated that a tenure hearing would not resolve the legal question of the validity of the transportation policy as applied to plaintiff; therefore, such a hearing was waived. Thereafter Ms. Morgan filed this action for declaratory and injunc-tive relief, contending that the new transportation policy effectively reduced her salary by requiring her to bear expenses previously borne by the School Board, and that her rights as a tenured bus driver under LSA-R.S. 17:493 were thus violated.
The statutory provisions relative to school bus operators are found in LSA-R.S. 17:491 et seq. It is undisputed that the plaintiff is a tenured (“permanent”) bus operator within the meaning of Sections 491 and 492, and that she has been employed by the School Board for 10 years. The crucial provision in this instance is Section 493, which provides in pertinent part as follows:
A. A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and then only if found guilty after a hearing by the school board of the parish or city in which the school bus operator is employed. An additional ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance, or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish or city, that it is in the best interests of the school system to abolish, discontinue, or consolidate said route or routes.
B. All hearings hereunder shall be private or public, at the option of the operator affected thereby. At least twenty days in advance of the date of the hearing the superintendent, with approval of the school board, shall furnish the affected operator a copy of the written grounds on which said abolition, discontinuance, or consolidation of routes is sought. The operator affected shall have the right to appear before the board with witnesses in his behalf and with *178 counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder, the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the operator. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
[[Image here]]
D. In the event that one or more school bus operators must be removed due to the abolition, discontinuance, or consolidation of routes, the principle of seniority shall apply, so that the last school bus operator hired to serve within the school system to be affected shall be the first to be removed.
Plaintiff argues that by eliminating parish funding for liability and collision insurance, gasoline, repairs and maintenance, as well as the bus itself, the new transportation policy reduces her salary. She asserts that such a reduction in salary effectively removes her from her position, violating her tenure rights, and cites several cases construing teacher tenure law as authority.
Initially, we note that there are important differences between the Teacher Tenure Law, LSA-R.S. 17:441 et seq., and the provisions relative to school bus operators, LSA-R.S. 17:491 et seq. The most prominent of these differences is the clearly contemplated possibility of removing a permanent, tenured driver from his position when he is free of any wrongdoing whatsoever. Section 493(A) plainly states that a school board may do so by discontinuing, abolishing, or consolidating one or more routes, when certain procedural requirements are met. There is no comparable provision for removing a tenured teacher, absent substandard behavior on the teacher’s part.
A second important difference is the possibility of advancement and promotion for teachers, which is protected by Section 444. There is no comparable provision in law for bus operators, whose only “advancement” is in the ranks of seniority. The cases on which appellant relies are all cases applying Section 444 to “demotions” after advancement by tenured teachers to higher positions.
In Pasqua v. Lafourche Parish School Board, 408 So.2d 438 (La.App. 1st Cir. 1981), this court held that a reduction in pay constituted a transfer to a lower position under LSA-R.S. 17:444. The plaintiff there was an assistant principal at a junior high school which was closed for economic reasons. He was therefore transferred, still as an assistant principal, to an elementary school; however, the pay scale for his position at the elementary school was lower than for his position at the junior high school. We held that under Section 444, “lower salary” and “higher salary” meant “lower position” and “higher position,” and thus plaintiff had been demoted in violation of the procedural provisions of the Teacher Tenure Act.
In Pizzolato v. State of Louisiana, Through the Board of Elementary and Secondary Education, 452 So.2d 264 (La.App. 1st Cir. 1984), we extended Pasqua’s interpretation of Section 444, which applies to teachers in city and parish schools, to its statutory counterpart for teachers in special schools, LSA-R.S. 17:45. Our holding there was that a reduction in salary constituted a transfer to a lower position or demotion within the meaning of LSA-R.S. 17:45. This holding took the analysis of Pasqua one step further in that we interpreted salary to mean “a reward or recompense for services performed” and to include “emoluments” of the office, such as on-campus housing and one free meal per day, in addition to the monetary amount actually paid to plaintiff. Thus, the elimination of housing and one daily meal formerly provided by the state constituted a reduction in “salary,” and therefore, under Section 45, was a demotion to a lower position in violation of that statute.
In the case sub judice, plaintiff Morgan contends that we should apply the holdings of Pasqua and Pizzolato construing LSA-R.S. 17:444 and 45 to Section 493 regarding bus operators. However, we must decline to do so, not only because of the differences between the two schemes previously *179 noted, but also because of the existence of one additional factor not yet discussed.
LSA-R.S. 17:158 sets forth the obligations and authority of school boards with regard to transportation of students. This statute provides in pertinent part as follows:
§ 158. School buses for transportation of students; employment of bus operators; alternative means of transportation; improvement of school bus turnarounds
A. (1) Each parish and city school board shall provide transportation for any student attending a school of suitable grade approved by the State Board of Elementary and Secondary Education within the jurisdictional boundaries of the parish or school board if the student resides more than one mile from such school.
[[Image here]]
(4) For such purposes, any parish or city school board may employ school bus operators as hereinafter defined in R.S. 17:491. However, nothing in this Section shall prohibit a parish or city school from entering into contracts or mutual agreements for providing school bus transportation.
B. If a parish or city school board determines transportation by school bus is impractical or is not available or that other existing conditions warrant it, the board may make arrangements for the use of common carriers in accordance with uniform standards established by the state superintendent of education and at a cost based upon the actual costs of such transportation. [Emphasis added.]
It is clear from a reading of this statute that school boards are granted a vast amount of discretion in fashioning transportation policies. They may employ bus drivers, as under Livingston Parish’s former policy, or they may contract with them as independent contractors, as the new Livingston policy attempts to do. They may even forego the use of school buses entirely, if “other existing conditions warrant it,” and arrange for student use of commercial carrier lines, such as Greyhound or Trailways.
If we were to make a blanket application of Pasqua’s and Pizzolato’s holdings to Section 493, as appellant suggests, the effect would be to negate completely the discretion granted school boards in Section 158 and to ignore the differences previously noted between tenured teachers and tenured bus operators. Therefore, appellant’s argument on this point has no merit.
We hold that the School Board is empowered to implement its proposed plan to gradually change to privately-owned buses for student transportation on a contract basis, notwithstanding tenure rights of bus operators. However, in doing so, it must comply with all procedural requirements applicable under LSA-R.S. 17:491 et seq. regarding dismissals and removals, including hearings and written recommendations and findings.
Appellant’s argument that the new policy delegates a nondelegable function of the school board to the transportation supervisor is without merit. The new policy as adopted by the School Board itself establishes a uniform rule that any bus will be condemned when the cost of repairs to it exceeds 50 percent of its value. While it is true that the factual determination of when repairs will exceed half of the value of any bus is to be made by the maintenance personnel — the mechanics who actually do the repair work — under the new policy, such a determination is a matter of specialized, professional judgment, not “an exercise of discretion” as argued by plaintiff-appellant. It would be ludicrous to suggest that the School Board members must also possess the knowledge of bus mechanics. To the extent the new policy relies upon the professional judgment of the mechanics employed as maintenance personnel by the School Board, there is no delegation of a nondelegable duty.
The judgment of the district court dismissing plaintiff’s suit is affirmed.
Costs of this appeal in the amount of $910.50 are assessed to plaintiff-appellant.
AFFIRMED.