JjPEATROSS, Judge.
This is an action to recover damages caused when the former City of Minden May- or Paul A. Brown (“Brown”) struck his head on a bench after a football player collided with him during a high school football game. Brown’s wife, Shirley (“Plaintiff’),[1] appeals the adverse judgment of the trial court. Plaintiff alleges that the trial court improperly concluded that the visiting team players’ bench at the Minden High School football stadium did not present an unreasonable risk of harm. Plaintiff also contends that this is a legal determination and is subject to de novo review on appeal. The Webster Parish School Board (“Defendant”) answez-ed the appeal and assigned as error the trial court’s assessment of all costs of these proceedings against the Defendant. For the following reasons, we amend the assessment of costs, and otherwise affirm the judgment of the trial court.
FACTS
On September 28, 1990, Brown was serving as a volunteer member of a chain crew on the sidelines of the Minden High School football stadium during a home game against Jonesboro-Hodge High School. At the time of the accident, Brown was tending the chain at the first down marker on the sideline in front of the visiting team bench. Both that bench and the original team bench had been constructed in approximately 1952 with, frames of steel oilfield pipe.[2] The bench on the visitor’s side was cemented into the ground approximately 12 feet and 9 inches from the sideline.
|2Puring the second quarter, Minden had the ball on third down with 14 yards to go for a first down. Minden called a pass play, in which running back Kenyan Cotton (“Cotton”) was the primary receiver. During the execution of the play, Cotton ran a “ten and 45” (ten yards down field with a 45 degree cut toward the visiting team sideline). Cotton, who was approximately six feet and one inch tall and weighed 220 pounds, caught the pass and almost immediately hit Brown on the sideline. The force of the collision knocked Brown directly backward and his head struck the players’ bench. As a result of the accident, Brown suffered permanent, severe brain damage.
Brown and his wife filed their original petition against the Webster Parish School Board on April 24,1991. Brown sued for his personal injuries and his wife for her loss of consortium. On September 19, 1991, that petition was amended to add Brown in his capacity as the administrator of his minor daughter, Paula, as an additional plaintiff.
On September 23, 1991, the Louisiana Municipal Risk Management Agency II (“LMRMA II”) intervened to recover medical benefits paid to or for the benefit of Brown. A suit by North Louisiana Rehabilitation Hospital against the Browns to recov *19 er hospitalization and medical expenses was consolidated with the Browns’ suit.[3]
A bench trial was held November 4, 1996, through November 7, 1996. At the trial, it was stipulated that (1) the Browns owed $126,312.70 for hospitalization and medical expenses and (2) LMRMA II had paid medical bills on Brown’s behalf totaling $204,-252.88, subject to a credit of $12,500.
laOn February 26,1997, the trial court filed its opinion. The trial court found that (1) the Board was owner and custodian of the Min-den High School football stadium; (2) as owner, the Board owed a duty to the participants, including the chain crew, not to expose them to an unreasonable risk of injury; (3) Mayor Brown’s striking his head on the immovable bench was a cause in fact of his resulting permanent brain damage; and (4) Mayor Brown was entirely free from fault. The trial court further found, however, that the visiting team players’ bench did not present an unreasonable risk of harm. Judgment was entered accordingly on April 14, 1997. Shirley Brown appeals from the judgment dismissing her claims.
DISCUSSION

Unreasonable Risk of Harm

At the outset, we conclude that the issue presented by Plaintiff is subject to the manifest error standard of review as enunciated in Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). See Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; McCarthy v. First Financial Ins., 30,015 (La.App.2d Cir. 12/10/97), 705 So.2d 1137; Bison v. Primrose, 30,011 (La.App.2d Cir. 12/10/97), 705 So.2d 249; Killough v. Bituminous Cas. Corp., 28329 (La.App.2d Cir. 5/8/96), 674 So.2d 1091; Dorthlon v. St. Francis Medical Center, 28,426 (La.App.2d Cir. 6/26/96), 677 So.2d 654; Lutz v. City of Shreveport, 25,801 (La.App.2d Cir. 5/4/97), 637 So.2d 636.
As such, to reverse the trial judge in his finding of fact, we must both find, after review of the record in its entirety, that there is no factual basis for his finding, and that the finding is clearly wrong or manifestly erroneous. The issue is Unot whether the jury or judge is right or wrong; it is whether the conclusion was reasonable. Stobart, supra; Dorthlon, supra.
Under a theory of either negligence or strict liability, Plaintiff has the burden of proving the following: (1) that Defendant had custody of the property causing the damage; (2) that the property was defective because it had a condition that created an unreasonable risk of harm; and (3) that the defect was the cause in fact of the injury. Killough, supra; Barnes v. New Hampshire Insurance Company, 573 So.2d 628 (La.App. 2d Cir.1991). Under a negligence theory, Plaintiff must also prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property.[4] Killough, supra; Barnes, supra. Under either theory, however, the lack of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant. Oster v. Dept. of Trans. & Dev., 582 So .2d 1285 (La.1991).
The trial judge concluded that Defendant had custody of the bench and that, “Mr. Brown’s head striking the immovable bench was a cause in fact of the resulting injuries.” Plaintiff argues that, under a risk/utility analysis, the location and construction of the bench created an unreasonable risk of harm. Additionally, Plaintiff contends that the trial judge’s findings of fact are not supported by the record and, therefore, do not support his conclusion that the bench’s location and construction did not create an unreasonable risk of harm. We will first review Plaintiffs arguments concerning the trial judge’s factual findings and then discuss the risk/utility analysis.
*20 |6In his written opinion, the trial judge stated that the following factors were extremely important:
1. The bench in question was constructed in approximately 1952 in an immovable state with metal pipe cemented in the ground. Testimony indicates the benches may have been reconstructed from time to time, however, pictures in the Minden High yearbook dated 1957 (and following years), clearly show construction and location similar to that on the night of the incident.
2. Minden High School has been continuously playing all home games at the stadium since 1952. This includes varsity, junior varsity, freshman, etc. Additionally, the junior high school and little league teams have periodically used the stadium for home games. A conservative estimate is that several hundred games have been played at the stadium with the immovable bench constructed in the manner and location it was on the night of the incident.
3. The testimony of W.W. Williams, Cleve Strong, Jerry Lott and former coach, Charles Harrington prove by a preponderance of the evidence that no incident regarding injury caused by the benches in question had ever been reported.
4. The location and construction of the bench was not in violation of either NCAA or High School Federation rules.

Past injuries involving this bench

Plaintiff first argues, “It is clear from the record that there had indeed been injuries related to the players’ benches at the Minden High School stadium.” Plaintiff points to the testimony of Dr. John Hill, who was the Minden High School team physician at the time of the accident. Plaintiff claims that Dr. Hill stated he saw players hit the bench and receive injuries. When asked if he had seen players knocked into the benches, Dr. Hill responded, “I think I’ve seen some players hit the benches maybe.” Dr. Hill also stated that the worst injuries resulting from collisions with the benches were bruises.
The parties stipulated the testimony of W.W. Williams, principal of Minden High School from 1952-1961 and supervisor/assistant superintendent of the Webster Parish School System from 1961-1971. According to the stipulation, Mr. |6Williams was never aware of any injuries resulting from the benches during his tenure as principal or supervisor/assistant superintendent. Cleveland Strong, principal of Minden High School from 1969-1984, testified he was not aware of any injuries resulting from contact with the benches. Jerry Lott, the superintendent of the Webster Parish School Board, testified that he had not received any complaints about the benches and had never seen anyone run into the benches. Finally, Charles Herrington, head coach of the Minden High School football team from 1977-1983, testified that he did not recall any serious injuries involving the benches and players.
Based on the testimony of W.W. Williams, Cleve Strong, Jerry Lott and Charles Her-rington, we find that the trial judge’s conclusion that no incident regarding injury caused by the benches had ever been reported is reasonable and supported by the testimony presented.

NCAA and Federation Rules

Plaintiff next argues that the trial court erred in concluding that the bench was not in violation of either NCAA or High School Fedei’ation rules and, therefore, could not have constituted an unreasonable risk of harm. Plaintiff also argues that the bench violates the NCAA rules’ general language requiring that obstructions within the playing-enclosure be placed and constructed so as to avoid any possible hazard to the players.
The testimony was conflicting and unclear as to which set of rules was in effect on the night of the game. Max Chauvin, assistant commissioner of the Louisiana High School Athletic Association, testified that from 1982 until 1992, Louisiana played football under the NCAA rules, rather than the High School Federation rules. He also stated, however, that with the adoption of the NCAA |7regulations, only the playing rules changed, and the rules regarding field layout remained the same as under the Federation Rules. William Boston, an official for football games since 1968 and a referee at the game in *21 question, also testified that while Louisiana was playing under the NCAA rules, the sidelines and field layout were still governed by the Federation rules. Mr. Herrington also testified that when Louisiana changed to the NCAA rules, the field layout rules remained the same as under the Federation rules.
Plaintiff, however, acknowledges in brief, and the testimony supports the fact, that neither.set of rules specifically discusses how the bench should be constructed. As such, the construction of the subject bench cannot be held to be in violation of either set of rules. The Federation rules do indicate the location of the bench. Those rules provide that the bench may be placed anywhere within the team box. The team box, is the designated area in which the teams must remain on the sidelines during the game. The team box begins at least two yards from the field sideline.
The bench at issue was approximately 12 feet 9 inches from the sideline and, therefore, was within the team area as required by the Federation rules. In addition, Mr. Chauvin stated that the benches at Minden High School Stadium did not violate any rules in effect at the time of the accident. Mr. Her-rington also stated that the Minden stadium field was in compliance with Federation rules and that he considered the benches to be safe.
We note that while the NCAA rules do not specifically state where the bench should be located, they do provide that the team area should begin 12 feet from the sideline. Again, the bench in question was approximately 12 feet andjg9 inches from the sideline. As such, the bench would fall within the team area as created under the NCAA rules.
The trial court was presented conflicting testimony as to what rules were in effect on the night of the game and what those rules required. We conclude that, based on the evidence presented, the finding that the location and construction of the bench did not violate either set of rules is not manifestly erroneous.

Knowledge of defect

Plaintiff also contends that Mr. Herrington and Mr. Pender, the head football coach of the Jonesboro-Hodge team on the night of the accident, had knowledge of the unreasonable risk of harm created by the benches and that this knowledge is imputable to Defendant. While both men testified that the area on the visitor’s side of the field between the sideline and the back fence at Minden High School Stadium was tight, neither man testified that the location and construction of this bench created an unreasonable risk of harm. In fact, Mr. Herrington testified that he believed the benches to be safe and Mr. Pender testified he did not believe that the proximity of the bench to the sideline or the manner in which it was constructed presented a hazard to him or his team.

Risk/Utility

We next consider whether Plaintiff carried his burden of proving that the bench posed an unreasonable risk of harm to Mr. Brown. This inquiry is designed to balance the likelihood and magnitude of harm against the utility of the “thing,” while taking into account a myriad of social, moral and economic values which are considered within the framework of the facts and circumstances of each individual case. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), Entrevia v. Hood, 427 So.2d 1146 (La.1983); Townsend, supra.
19SimiIar to the duty/risk analysis, it must be determined whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff sustained injury, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties. Oster, supra; Townsend, supra. The absence of an unreasonably dangerous condition of the property implies the absence of a duty. Oster, supra.
There is some economic and social utility derived from the stationary bench. Any bench would provide a place for nonparticipating players to sit and rest during the action of the game. A stationary bench, however, also prevents the possibility of the *22 bench being moved even closer to the sideline.
The magnitude of the injury suffered by Brown was great. He suffered permanent brain damage from the impact with the bench. Plaintiff, however, fails to show that a condition of the bench created an unreasonable risk of harm which was the cause of Brown’s injuries. In fact, Ronald Gable, a psychologist accepted by the court as an expert in clinical neuropsychology, testified that Brown’s injuries were caused by the sudden deceleration of his head when it hit the bench and that hitting the ground or an aluminum mobile bench could result in the same type injuries as suffered by Brown.
The risk of injury in the present case is minimal as shown by the bench’s history. This was the “first accident” associated with this bench. The fact that the “first accident” did not occur during the bench’s existence of approximately 38 years, while a large number of football games and other activities provided exposure, is a factor to be taken into consideration in determining the relative risk | ipof injury. Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080; Reed, supra.
We also note that the Federation/NCAA rules were in effect to protect the safety of the players, spectators and all others involved in the football game. While compliance with the applicable regulations promulgated by either of the sports associations is not definitive in assessing liability, such standards provide guidelines for gauging whether a condition presents an unreasonable risk of harm. Townsend v. Westinghouse Elevator Corp., 25,966 (La.App.2d Cir. 8/17/94), 641 So.2d 1022.
According to Mr. Chauvin’s testimony, pri- or to every game the officials inspected the field and sidelines for any hazards or rule violations and, if any were discovered, reported such hazards or violations to the school officials responsible for the stadium and requested that the problems be fixed prior to the game. If the problem were not fixed, no game would be played. Coach Herrington testified that he was never informed by any official that he had an illegal sideline. Mr. Strong also testified that he never received any complaints about the benches while he was pi’incipal from 1969-1984. If the location and construction of the bench violated either set of rules, including the general language of the NCAA rules, the game officials should have informed someone associated with Minden High School during the approximately 38-year history of the bench. Based on the evidence presented, this never occurred.
Plaintiff also argues that there were a number of economically feasible options/alternatives to the immovable wooden benches. Plaintiff contends that the accident could have been prevented if the bench were moved further back, had been padded or had been substituted with a movable aluminum bench. We again |nnote, however, the testimony of Ron Gable that Brown’s injuries could have resulted from hitting the ground or a movable aluminum bench.
Based on the above analysis and considering the totality of the evidence, the trial court was not manifestly erroneous in concluding that the bench did not create an unreasonable risk of harm.

Court Costs

Defendant answered Plaintiffs appeal and alleged that the trial court improperly assessed all costs of the proceedings, which totaled $17,055.22, against Defendant. La. C.C.P. art. 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
LSA-R.S. 13:4521 provides in pertinent part:
A. (1) Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S. 48:451.3, and as hereinafter provided, neither the state, nor any parish, municipality, nor other political subdivision, public board, or commission, nor any officer or employee of any such governmental entity when acting within the scope and authority of such employment or when discharging his official duties shall be required to pay court *23 costs in any judicial proceeding instituted or prosecuted by or against the state, or any such parish, municipality, or other political subdivision, board, or commission, in any court of this state or any municipality of this state, including particularly but not exclusively those courts in the parish of Orleans and the city of New Orleans.
LSA-R.S. 13:5112 provides in pertinent part:
A. In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party’s court costs under |12R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.
LSA-R.S. 13:5112 is an exception to the general rule that the state shall not be required to pay court costs. The exception in 13:5112 allows the court to “grant in favor of the successful party and against the state ... or political subdivision against which judgment is rendered, an award of such successful party’s court costs....” In the present case, however, judgment was not rendered against the state or a political subdivision. We conclude that the assessment of all costs of the proceeding against the Defendant is in error and we amend the judgment to eliminate such assessment.
CONCLUSION
For the foregoing reasons, we amend the judgment of the trial court to eliminate the assessment of costs against the Defendant, and otherwise affirm. Costs of this appeal are assessed to the appellant.
AMENDED AND AFFIRMED.

. On July 2, 1996, Brown died of causes unrelated to the accident. By order signed October 18, 1996, Shirley Brown was substituted in place of Brown individually and in his capacity as administrator for their daughter, Paula.

. In approximately 1980, both the home and visiting team benches had the original wooden seat slats replaced and backrests added. The location of the visiting team bench, however, did not change.

. Additional defendants were added by amendments to the Browns' original petition. By the time of trial, all additional defendants had been removed, either by motion practice or compromise and settlement.

. We note that under LSA-R.S. 9:2800, to establish liability under La. C.C. art. 2317, Plaintiff would also have to prove that Defendant had actual or constructive notice of the defect which caused the damage prior to the occurrence, and had a reasonable opportunity to remedy the defect.