733 So.2d 102 (1999)
Calvin THOMAS, Plaintiff-Appellant,
v.
EVANGELINE PARISH SCHOOL BOARD, Defendant-Appellee.
No. 98-1458.
Court of Appeal of Louisiana, Third Circuit.
March 24, 1999.
Writ Denied June 4, 1999.
*103 James Isaac Funderburk, Abbeville, for Calvin Thomas.
Daniel G. Brenner, Alexandria, for Evangeline Parish School Board.
Before: DOUCET, C.J., THIBODEAUX, and WOODARD, JJ.
DOUCET, Chief Judge.
The Plaintiff-Appellant, Calvin Thomas, appeals the trial court's judgment upholding the Evangeline Parish School Board's decision to terminate his employment as a school janitor. We reverse the decision of the trial court.

PROCEEDINGS IN THE TRIAL COURT
In his Reasons for Judgment, the trial judge outlined the basic facts of the case as follows:
The plaintiff was a full time non-tenured janitor at the ACE School in Evangeline Parish and was also used as a relief bus driver at the school. Thomas was discharged from his duties as janitor on August 2, 1995 by the School Board at its regular meeting. On or about July 22, 1996 Thomas filed a Petition for Declaratory Judgment and writ of Mandamus against the Evangeline Parish School Board seeking reinstatement. Thomas alleges the Board violated the provisions of their procedures for separation of employees in firing him. In this petition Thomas alleges that the Board failed to follow their procedures in the following respects:
a) failing to provide plaintiff with a copy of the recommendation of his principal or department head;
b) failing to provide plaintiff with an opportunity to resign or retire;
c.) to provide plaintiff with a copy of the written recommendation of the superintendent or designee as required[.]
The trial judge went on to discuss the law and jurisprudence applicable to the case, stating:
The Louisiana Constitution provides for the creation and recommendation of parish school boards but does so subject to the power of the Legislature to enact laws affecting them. By enacting Louisiana Revised Statutes 17:81.5, the Legislature removed non-tenured school employees from the category of "at will" employees. This legislation, in effect, limited the authority of school boards to hire and fire non-tenured, non-teaching personnel without regard to the rights of the employees so affected.

*104 The Louisiana Constitution and the Legislature entrust the administration of the school system to the Parish School boards and not to the courts. The School Board is vested with broad discretion in the administration of the school system, nevertheless, due process requires judicial review to insure that the school boards do not abuse this discretion. But that review is limited, and where there is a rational basis, which is supported by substantial evidence for the School Board's discretionary determination, the Courts cannot and should not substitute their judgment for that of the School Board. Myres v. Orleans Parish School Board, 423 So.2d 1303 [(La.App. 4 Cir.1982)], writ denied, 430 So.2d 657 [(La.1983)].
The Court finds that the School Bus driver tenure act does not apply to the part time lunch route which Mr. Thomas had. Mr. Thomas is not, therefore, entitled to the procedural mandates of R.S. 17:492. The procedures which the Board was required to follow in terminating Mr. Thomas [were] its "Procedures for Separation of Employees."
Pursuant to Louisiana Revised Statute 17:91.5 the Evangeline Parish School Board adopted "Procedures for Separation of Employees" which reads as follows:
"PROCEDURES FOR SEPARATION OF EMPLOYEES"
With the exception of lay-offs caused by programmatic changes, budget cuts, staff reorganizations and/or reductions in force, no school board employee shall be dismissed without just cause. Dismissal of tenured or contracted employees shall be handled in accordance with the requirements of Louisiana Law and as outlined in the Evangeline Parish Personnel Assessment Plan, reviewed annually. Dismissal of non-tenured employees shall be accomplished in accordance with the following procedure:
1. The employee's immediate supervisor or other person recommending his dismissal shall discuss the reasons therefore with the principal of the school where the employee works or, if the employee is not housed at a particular school, with the department head under whom the employee works (i.e. director of maintenance, director of transportation, director of finance, etc.).
2. If the principal or department head feels that dismissal is appropriate then he shall make a written recommendation to the superintendent or his designee outlining the reasons for the recommendation. The employee shall be provided a copy of such recommendation.
3. The superintendent or his designee shall thereafter conduct a conference with the principal or department head, the employee, and the employee's immediate supervisor (if other than principal or department head). Those recommending the dismissal of the employee shall be asked therein to explain their reasons for such recommendation, and the employee shall be given the opportunity to rebut those reasons and/or to explain his position. The conference may be recessed if the superintendent or his designee feels that additional information is needed before a decision can be made.
4. If, after considering the information presented in the conference and other information considered important, the superintendent or his designee feels that dismissal is appropriate, then the employee shall be advised of that staff-level determination and shall be given the opportunity to resign and/or retire.

*105 5. If the employee does not exercise his opportunity to resign and/or retire, then the superintendent or his designee shall make a written recommendation of dismissal to the school board. The recommendation shall outline the reasons, therefore, and a copy of it shall be provided to the employee.
6. The School Board will be asked to act upon the recommended dismissal at the next meeting following receipt of such written recommendation.
7. A non-tenured employee who has been recommended to the board for dismissal shall not be entitled to a hearing before the board unless a majority of the members vote to afford one.
All policies, procedures, regulations, etc., previously adopted by the board which are in conflict with the provisions of this policy are hereby repealed.
There is no doubt that the School Board has technically failed to comply with its own procedure for separation of employees. The School Board argues that it has substantially complied therewith. For a number of years Mr. Thomas has been apprised of and called on the carpet for his failure to perform his attendant duties and for willful disobedience. He has continually been skating on the edge, refusing to cure these deficiencies, apparently relying upon the School Board issuing yet another reprimand of which he has had many. He has been counseled concerning these matters on [many] occasions. There was certainly a rational basis for the Board's action in firing this individual as it was supported by substantial evidence of the employee's actions and inactions. They actually had ample reason to discharge him long ago but continued to work with him to try to make a good employee of him. Although he has brought this all on himself he now seeks to avoid the consequences of his actions and inactions because of a technicality i.e. failure of the Board to comply with its "Procedures for Separation of Employees".
While there is no doubt the School Board did not strictly comply with its procedures for separation, the Court here finds substantial compliance. The failure to follow procedure to the letter did not adversely affect the plaintiff as the outcome was not in doubt. No employer can allow an employee to show complete disdain for the orders and duties required of him by his supervisors, continually reprimand and try to rehabilitate him and allow him to continue to flaunt their orders.
Clearly the plaintiff should have known when he received notice of the School Board meeting that suspension and/or termination was one of the things that would be addressed. This is borne out by the fact he attended the meeting with his union representative.

LAW
The law regarding the standard of appellate review is well settled:
A court of appeal may not set aside a trial court's or a jury's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La. 1987); Rosell, 549 So.2d 840; Stobart, 617 So.2d 880. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trier of fact *106 may choose to reject all of the testimony of any witness or may believe and accept any part or parts of a witness' testimony and refuse to accept any other part or parts thereof. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir.1990).
Tubre v. State, Dept. of Transp. and Dev., 96-1194, p. 3 (La.App. 3 Cir. 4/2/97); 693 So.2d 1190, 1192, writs denied, 97-1913 (La. 11/21/97); 703 So.2d 1307, 97-1916 (La.11/21/97); 703 So.2d 1307.
In this case, the Plaintiff is protected by La.R.S. 17:81.5, which provides as follows:
Not later than January 1, 1988, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force, as provided for in R.S. 17:81.4. The school board shall provide a procedure by which any employee, whose dismissal is governed by this Section, may participate in the development of the rules and policies. Such rules and policies shall be made available for public inspection within ten days after they are finally adopted.
The Evangeline Parish School Board complied with the mandate of La.R.S. 17:81.5 when it adopted its "Procedures for Separation of Employees." In McKenzie v. Webster Parish School Board, 26,713, p. 7 (La.App. 2 Cir. 4/5/95); 653 So.2d 215, 219, writ denied, 95-1415 (La.9/22/95); 660 So.2d 472, the court stated that: "The School Board is given great discretion in fashioning, adopting and implementing its plan and the standard of review used by courts when called upon to review whether a school board complied with its own policies is substantial compliance. Harris v. West Carroll Parish, School Board, 605 So.2d 610 (La.App. 2d Cir.1992)."
The trial judge in this case found that the school board was in substantial compliance with its procedures. On review, we must scrupulously examine the record to determine, not whether the conclusion reached by the trial judge was right or wrong, but whether his conclusion was reasonable in light of the evidence and testimony adduced at trial. Our review of the facts in this case convinces us that the conclusion reached by the trial judge was not reasonable and that his decision was clearly wrong.

DISCUSSION
The Plaintiff does not contest the trial judge's ruling with regard to his part-time employment as a bus driver. Therefore, we need only address those issues concerning Thomas's employment as a custodian. The Plaintiff would have us consider only the events of July and August of 1995 leading up to his termination. However, we, like the trial judge, find that it is appropriate to consider the Plaintiff's entire employment record.
Thomas's first full year with the Evangeline Parish school system was the 1988-1989 academic year. He served as the custodian at the Evangeline Parish Career School, which became the Alternate Center for Education (ACE) in 1992. He held this position when he was terminated in August 1995. His supervisors were: Roy Fontenot, who served as principal for the Career School/ACE through the 1993-1994 school year; Glen Lafleur, who was principal in 1994-1995; and Harold Soileau, the assistant principal, who was acting principal during the summer of 1995. When Thomas was terminated, the principal or acting principal of ACE reported to the Assistant Superintendent for Personnel, Dr. Albert Zackrie, Jr. and the Superintendent of the Evangeline Parish schools, Larry Broussard. Dr. Zackrie was newly appointed in 1995, but Broussard had been Superintendent for a number of years.
Thomas's first year of employment seems to have been uneventful. However, beginning in January 1990, his job performance appears to have been almost constantly below the level expected. On January *107 22, 1990, the Plaintiff failed to secure a tractor and was called and told to do so. The next morning the tractor had not been moved. Thomas's failure to take action resulted in a conference between the Plaintiff, Fontenot and Broussard in which the tractor incident and Thomas's unsatisfactory job performance were discussed. The Plaintiff signed a document acknowledging the conference and promising to do better.
In November 1991, Thomas was again in trouble. He was placed on probation for the remainder of the 1991-1992 school year. Although he did not sign a letter documenting the conference, he was notified and signed a receipt for a certified letter from the Superintendent informing him of the school board's action. In June of 1993, Fontenot made a notation in the Plaintiff's personnel file that he had to have a conference with the Plaintiff over a classroom door being left open. That notation was not signed by Thomas, but he signed a letter detailing allegations of more serious shortcomings discussed in an August 25, 1993 conference, and a letter detailing another conference on April 18, 1994, dealing with unsatisfactory job performance.
Glen Lafleur took over as principal for the 1994-95 school year. That year, Lafleur met with Thomas about unsatisfactory job performance on a number of occasions. He met with Thomas on October 6, 1994. He had a counselor speak with Thomas on November 15, 1994. Lafleur personally spoke with Thomas on December 8 and 12, 1994. He had Harold Soileau, his assistant principal, speak with the Plaintiff on December 13, 1994. Lafleur again personally counseled Thomas on December 14 and 16, 1994. On December 15, 1994, in an attempt to correct any misunderstanding about Thomas's responsibilities, Lafleur drew up a two-page document, delineating the Plaintiff's responsibilities. Although Lafleur stated that Thomas refused to sign the document, the refusal is not documented in the personnel file. On December 30, 1994 and January 3, 1995, Lafleur spoke to Superintendent Broussard about the Plaintiffs continuing unsatisfactory job performance and suggested that the Plaintiff be terminated. It appears that Broussard counseled the Plaintiff at that time. We note that Thomas's personnel record is almost devoid of formal counseling statements signed by the Plaintiff.
In spite of this, Thomas continued to have problems with his job performance through the spring semester. Lafleur was forced to counsel Thomas on February 7, April 21, and May 15, 1995. At trial, Lafleur testified that many of the documents were not signed by Thomas because he refused to do so. However, no notations to that effect appear in the Plaintiff's record. Lafleur left ACE at the end of the 1994-95 school year to become the principal at Ville Platte High School.
In mid-July 1995, Harold Soileau, who was the acting principal after Lafleur left, wrote an undated letter to Dr. Albert Zackrie asking the school board to look into the Thomas situation and to take "immediate" action. The letter did not recommend or mention termination. In response to Soileau's request, Dr. Zackrie sent a letter to Thomas, dated July 25, 1995, informing him that there would be a hearing at the August 2, 1995 school board meeting "to evaluate your job performance as janitor at ACE." The letter went on to inform Thomas that he had the right to be represented by an attorney at the hearing. The letter also indicated that supporting enclosures were being sent. Finally, the letter stated that Thomas should contact Dr. Zackrie if he had any questions. The letter neither stated that Thomas was being considered for dismissal nor offered him the option of retiring. Although Thomas denies receiving the "enclosures," Dr. Zackrie testified that he was sure they were sent. In any event, these enclosures would not have put the Plaintiff on notice that his termination was to be considered.
*108 Thomas contacted and was accompanied to the school board meeting by Ms. Jacqueline Sumler, a "Uniserve Director" with the Louisiana Association of Educators, a position equivalent to a union representative. However, the record contains no indication that Thomas was offered the opportunity or took action to rebut any of the allegations against him or to explain his poor job performance.
At the meeting, Broussard orally recommended that Thomas be terminated. The board followed this recommendation and Thomas was notified of the board's action by Dr. Zackrie in a letter dated August 24, 1995. This suit followed.
We find that the evidence in the record clearly supports the board's decision to fire Thomas. However, the board did not follow its own procedures in this matter. Thomas's immediate supervisors, whether the principal or the acting principal at ACE, never discussed his possible termination, or the reasons therefor, with him. Thomas's supervisor made no written recommendation to the superintendent. There was no conference between the superintendent, Thomas and the principal or acting principal at ACE. Thomas was never given the opportunity to retire or resign. No written recommendation was presented to the School Board. In light of these facts, it is clear that there was not substantial compliance with Board policy in this matter.
For these reasons, the judgment of the trial court is reversed. The Plaintiff, Calvin Thomas, is reinstated to his position as janitor at ACE, retroactive to the date of his dismissal, with reimbursement of all salary and benefits to which he would have been entitled had he not been terminated. Costs from the trial court and appellate courts in the amount of $1125.68 are assessed to the Evangeline Parish School Board[1].
REVERSED AND RENDERED.
NOTES
[1] See La.R.S. 13:5112 and Brown v. Webster Parish School Bd., 30,350 (La.App. 2 Cir. 4/16/98); 716 So.2d 16.