Dear Senator Holden:
I am in receipt of your request for an Attorney General's opinion regarding the state and local authority under which the East Baton Rouge School Board may contract with private providers for services such as cafeteria, custodial, maintenance and student transportation. You also seek an opinion as to whether entry into such contracts is subject to the Public Bid Law.
The Louisiana Constitution provides for the creation of parish school boards in Article VIII § 9(A), which states "[t]he legislature shall create parish school boards and provide for the election of their members." School boards are "subject to control and supervision by the State Board of Elementary and Secondary Education and the power of the legislature to enact laws affecting them." La. Const. Art. VIII § 10. The legislature has vested the school boards of this state with general control and management of the public schools in their district. La.R.S.17:81 sets forth the general powers of school boards. Within the school boards' general powers granted in La.R.S. 17:81 is the authority of school boards to employ teachers and the authority to "make such rules and regulations for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education, as it may deem proper." La.R.S. 17:81(A)(1); 17:81(C). The State Board of Elementary and Secondary Education is specifically prohibited from exercising control over "the business affairs of a parish or city school board or the selection or removal of its officers and employees." La. Const. Art. VIII § 3. Therefore, as to its business affairs and employment practices or contractual decisions, a school board is only limited by laws regulating its actions or an absence of statutory authority to take action.
In addition to the general powers outlined in La.R.S. 17:81, specific statutory authority exists for school boards to employ custodial and maintenance staff. La.R.S. 17:84.1 provides:
 Parish and city school boards may also employ janitors, custodians, and maintenance employees as said boards may deem desirable for the proper and efficient conduct of their respective school system at such salaries, unless otherwise prescribed by law, and with such qualifications and duties as the board may deem advisable.
School boards' responsibilities and powers in reference to transportation are found in La.R.S. 17:158, wherein school board authority to employ bus drivers is granted. La.R.S. 17:158(A)(4) provides:
 For such purposes, any parish or city school board may employ school bus operators as hereinafter defined in R.S. 17:491. However, nothing in this Section shall prohibit a parish or city school from entering into contracts or mutual agreements for providing school bus transportation.
School boards are also given the authority to maintain and operate school lunch departments. La.R.S. 17:82 provides:
 The parish school boards throughout the state may maintain and operate lunch departments on a non-profit basis to provide meals for school children attending the public schools within their respective jurisdictions.
 The employees in these departments shall not be entitled to tenure rights under any of the tenure laws of the public school system.
School board authority to administer a school lunch program is found in La.R.S. 17:191 through 17:199. A school lunch program is defined as "a program under which lunches are served by any school in this state on a non-profit basis to children in attendance, including any such program under which a school receives assistance out of the funds appropriated by the Congress of the United States." La.R.S. 17:191(3). As to the operation of a school lunch program, La.R.S. 17:195 provides:
 The school boards, in order to provide for the operation of school lunch programs in schools under their jurisdiction, may enter into contracts with respect to food, services, supplies, equipment, and facilities for the operation of such programs and may use therefor funds disbursed to them under the provisions of this Sub-part any federal funds, commodities, gifts, and any other funds that may be received for school lunches under this program.
* * *
 State funds reimbursed to school boards shall be used for the purchase of food only. Provided, that any surplus of funds, after the payment for food purchased, may be used for preparation or serving the school lunches. School boards shall be required to purchase food wholesale at the lowest prices quoted for good quality products or at prices no greater than the wholesale rate for the same item.
In addition to the express powers granted by the legislature in the above cited provisions, a school board possesses additional implied powers that are necessary to implement its policies and fulfill its duties. Many prior cases and Attorney General Opinions have recognized these additional implied powers. See Louisiana Association of GeneralContractors v. Calcasieu PSB, 586 So.2d 1354 (La. 1991); LouisianaTeacher's Assoc. v. Orleans PSB, 303 So.2d 564 (La.App. 4th Cir. 1974),writ denied, 305 So.2d 541 (La. 1975); Disposal Systems, Inc. v.Calcasieu PSB, 243 So.2d 915 (La.App. 3d Cir. 1971); Shaw v. Caddo PSB,347 So.2d 39 (La.App. 2d Cir. 1977), writ denied, 350 So.2d 676 (La. 1977). See also Attorney General Opinion Nos. 75-804; 78-538; 79-441; 80-302; 81-1213; 82-158; 84-478; 85-476; 86-273; 87-297; 89-589; 93-224; 93-456; 94-509; 94-569; 97-106; 01-108; 03-207A, all of which address implied powers of school boards in various contexts. This office has consistently recognized that among school boards' broad powers is the authority to enter into contracts. See Attorney General Opinion Nos. 79-412; 79-561; 89-119; 93-375 and 00-291A.
La.R.S. 17:84.1, 17:158(A)(4) and 17:82 provide school boards with the authority to employ individuals on the custodial or maintenance staff, as school bus operators, and in the lunch department respectively. Each provision uses the term "may" in reference to the school boards' abilities to create a department or employ individuals for the stated positions. La.R.S. 1:3 states that the word "shall" is mandatory and the word "may" is permissive. The use of permissive language and the absence of use of the word "shall" indicate that school boards are not required to employ such staff.
Based on the absence of a requirement to employ such staff and the express and implied authority granted to school boards in La.R.S. 17:81, including the power to contract, it is the opinion of this office that school boards have the authority to enter into contracts with private providers for services such as custodial, maintenance and student transportation. This authority, along with the authority granted in La.R.S. 17:195, permits school boards to contract with private providers for cafeteria services as well. However, except as provided in La.R.S.17:195 regarding the purchase of food only, a contract for cafeteria services is also governed by La.R.S. 17:194(B), which prohibits the use of state funds in a school lunch program that is administered by a for-profit entity. La.R.S. 17:194(B) provides in pertinent part:
 . . . no state funds shall be disbursed for the support of any school lunch program which shall be used by any private person, enterprise, concern or other entity for profit, regardless of any authority in federal or state law for contracting with such a private supplier or provider of school lunch programs.
The above discussion addresses a school board's general authority to enter into contracts with private providers for custodial, maintenance, student transportation and cafeteria services; however, additional issues are raised when a school system that employs individuals to perform the services in question enters into contracts with private providers to perform the services. As indicated above, as to its employment practices, a school board is limited by statutes that regulate its actions. The classes of employees in question may be dismissed through a reduction in force or dismissed independently if all statutory and school board policy requirements are met.
School boards have the authority to dismiss employees pursuant to a reduction in force. La.R.S. 17:81.4 provides:
 A. Not later than January 1st, 1984, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing teachers at any time a reduction in force is instituted by such school board. Such rules and policies shall be made available for inspection by teachers, other school employees and the general public within ten days after final adoption.
 B. Not later than January 1st, 1986, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing any full-time secretary, teacher's aide, school clerk, or custodian at any time a reduction in force is instituted by that school board. These rules and policies shall be made available for inspection, by any full-time secretary, teacher's aide, school clerk, or custodian, and the general public within ten days after their final adoption.
 C. Not later than January 1, 1987, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees other than those for which provision is made in Subsections (A) and (B), at any time a reduction in force is instituted by the school board. Such rules and policies shall be made available for inspection by any such school employee and the general public within ten days after their final adoption.
 D. Not later than January 1, 1996, all reduction in force policies of the city and parish school boards and special schools as provided in this Section shall include but not be limited to the following minimum standards:
(1) Certification, if applicable.
(2) Seniority in the system.
(3) Tenure of employees.
 (4) Academic preparation, if applicable, within the employee's field.
 (5)(a) The right of an employee notified of an action which results from implementation of a reduction in force policy to request in writing a review of such action and to receive notice of the results of such review.
 (b) The right of an employee to pursue the matter through the school board's adopted grievance procedure.
La.R.S. 17:81.4 mandates the dates by which school boards must adopt reduction in force policies and the minimum standards that must be included in such policies. La.R.S. 17:81.4 does not mandate the reasons for implementing a reduction in force or that school board reduction in force policies are to be limited to a reduction of only a portion of its classes of employees. The nature of a reduction in force and any implementation provisions are governed by each school board's reduction in force policy adopted in compliance with La.R.S. 17:81.4. Therefore, if the reduction in force policy of a school board authorizes a reduction in force of one or more classes of employees, the procedural requisites outlined in such policy must be complied with when dismissing the employees.
The dismissal of employees who are not the subject of a reduction in force is governed by other statutory provisions and school board policies. La.R.S. 17:81.5 requires city and parish school boards to develop and adopt rules and policies for use when dismissing school employees who cannot attain tenure. It provides:
 Not later than January 1, 1998, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force, as provided for in R.S. 17:81.4. The school board shall provide a procedure by which any employee, whose dismissal is governed by this Section, may participate in the development of the rules and policies. Such rules and policies shall be made available for public inspection within ten days after they are finally adopted.
School lunch department employees and custodial and maintenance employees cannot, by law, attain tenure. La.R.S. 17:82 specifically provides that lunch department employees are not entitled to tenure rights and there is no provision in Title 17 of the Louisiana Revised Statutes that provides maintenance and custodial employees with the ability to attain tenure. Thus, a school board's dismissal of lunch department and custodial and maintenance employees must be carried out pursuant to the school system's dismissal policy adopted in compliance with La.R.S.17:81.5. See Scott v. Ouachita Parish School Board, 768 So.2d 702
(La.App. 2d Cir 2000); Harris v. West Carroll Parish School Board,605 So.2d 610 (La.App. 2d Cir. 1992), writ denied, 609 So.2d 255 (La. 1992); Thomas v. Evangeline Parish School Board, 733 So.2d 102 (La.App. 3d Cir. 1999), writ denied, 744 So.2d 626 (La. 1999); Cowart v. Lee,626 So.2d 93 (La.App. 3d Cir. 1993); Samuel v. Holmes, 138 F.3d 173 (5th Cir. 1998).
Unlike lunch department, custodial and maintenance employees, school bus operators can attain tenure. The statutory provisions relative to school bus operators are found in La.R.S. 17:491 et seq. La.R.S.17:492
provides for the probation and tenure of bus operators, including the removal of probationary bus operators, as follows:
 Each school bus operator shall serve a probationary term of three years reckoned from the date of his first employment in the parish in which the operator is serving his probation. During the probationary term the parish school board may dismiss or discharge any operator upon the written recommendation of the parish superintendent of schools accompanied by valid reasons therefor.
 Any school bus operator found unsatisfactory by the parish school board at the expiration of the probationary term shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification such probationary school bus operator shall automatically become a regular and permanent operator in the employ of the school board of the parish in which he has successfully served his probationary term;
* * *
The removal of permanent school bus operators is governed by La.R.S.17:493, which provides:
 A. A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, or incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and then only if found guilty after a hearing by the school board of the parish or city in which the school bus operator is employed. An additional ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance, or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish or city, that it is in the best interests of the school system to abolish, discontinue, or consolidate said route or routes.
 B. All hearings hereunder shall be private or public, at the option of the operator affected thereby. At least twenty days in advance of the date of the hearing the superintendent, with approval of the school board, shall furnish the affected operator a copy of the written grounds on which said abolition, discontinuance, or consolidation of routes is sought. The operator affected shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder, the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the operator. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
 C. If a permanent school bus operator is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable, and practical operating condition, or of being a member of or contributing to any group, organization, movement, or corporation that is prohibited by law or injunction from operating in the state, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the school bus operator a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason, offense, or instance upon which the recommendation is based. Such operator may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the operator is ordered reinstated and restored to duty, the operator shall be entitled to full pay for any loss of time or salary he may have sustained by reason of the action of the said school board.
 D. In the event that one or more school bus operators must be removed due to the abolition, discontinuance, or consolidation of routes, the principle of seniority shall apply, so that the last school bus operator hired to serve within the school system to be affected shall be the first to be removed.
* * *
La.R.S. 17:491 et seq. must be read in conjunction with La.R.S. 17:158, which sets forth the obligations and authority of school boards with regard to transportation of students. La.R.S. 17:158 provides in pertinent part as follows:
 (A)(1) Except as provided by Subsection H of this Section and in accordance with the requirements of Subsection F of this Section, each parish and city school board shall provide free transportation for any student attending a school of suitable grade approved by the State Board of Elementary and Secondary Education within the jurisdictional boundaries of the parish or school board if the student resides more than one mile from such school.
* * *
 (4) For such purposes, any parish or city school board may employ school bus operators as hereinafter defined in R.S. 17:491. However, nothing in this Section shall prohibit a parish or city school from entering into contracts or mutual agreements for providing school bus transportation.
 B. If a parish or city school board determines transportation by school bus is impractical or is not available or that other existing conditions warrant it, the board may make arrangements for the use of common carriers in accordance with uniform standards established by the state superintendent of education and at a cost based upon the actual costs of such transportation.
* * *
La.R.S. 17:158 allows school boards to determine the manner in which they will discharge their responsibility of providing transportation to students. In Morgan v. Livingston Parish School Board, the First Circuit examined a policy of the Livingston Parish School Board to gradually change to privately owned buses for student transportation. 577 So.2d 176
(La.App. 1st Cir. 1991), writ denied, 578 So.2d 933 (La. 1991). In reference to La.R.S. 17:158, the First Circuit found that:
 [i]t is clear from a reading of this statute that school boards are granted a vast amount of discretion in fashioning transportation policies. They may employ bus drivers, as under Livingston parish's former policy, or they may contract with them as independent contractors, as the new Livingston policy attempts to do. They may even forego the use of school buses entirely if `other existing conditions warrant it,' and arrange for student use of commercial carrier lines, such as Greyhound or Trailways.
 Morgan, 577 So.2d at 179.
The First Circuit held that the Livingston Parish School Board had the authority to implement its proposed plan for gradually changing to privately owned buses for student transportation on a contract basis, including the requirement that drivers purchase their own buses, notwithstanding the tenure rights of bus operators. Id. at 179. However, the court further found that in implementing its plan, the school board "must comply with all procedural requirements applicable under LSA-R.S. 17:491 et seq. regarding dismissals and removals, including hearings and written recommendations and findings." Id. at 179. Please note that Morgan did not involve the implementation of a reduction in force plan by the Livingston Parish School Board.
Based on the foregoing, it is the opinion of this office that, although a school board has the authority to enter into contracts with private providers for cafeteria, custodial, maintenance and student transportation services, it must comply with all procedural requirements set forth in statute, rule or policy regarding the dismissal and removal of employees who are no longer needed to perform those functions. The dismissal may be carried out pursuant to a reduction in force policy adopted in compliance with La.R.S. 17:81.4, if applicable, a removal policy adopted in compliance with La.R.S. 17:81.5 and/or La.R.S. 17:491 et seq.
In addition to the authority of the East Baton Rouge Parish School Board to enter into contracts with private providers, you also seek an opinion as to whether entry into such contracts is subject to the Public Bid Law. As a "public entity," as defined in La.R.S. 38:2211(A)(11), the East Baton Rouge Parish School Board is subject to the provisions of the Louisiana Public Bid Law, La.R.S. 38:2211 et seq. Under the Public Bid Law, contracts for public work projects costing $100,000 or more must be advertised and let by contract to the lowest responsible and responsive bidder. La.R.S. 38:2212(A)(1)(a) and (d). A public work is defined as ". . . the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity." La.R.S. 38:2211(A)(12). It is our opinion that a contract for cafeteria, custodial, maintenance or student transportation services is not a contract for a public work project.
The Public Bid Law also applies to certain purchases of materials and supplies. Contracts for the purchase of materials and supplies exceeding $20,000 must be advertised and let by contract to the lowest responsible and responsive bidder. La.R.S. 38:2212.1(A)(1)(a). Contracts for the purchase of materials and supplies costing $10,000 or more, but less than $20,000, must be made by obtaining no fewer than three telephone or facsimile quotations. La.R.S. 38:2212.1(A)(1)(b).
Purchases of materials and supplies made by a School Food Authority in the operation of a school lunch program, as defined in La.R.S. 17:191
through 17:199, are not subject to the Public Bid law. In Attorney General Opinion No. 85-616, this office found that "the wording of La.R.S. 17:195 provides sufficient basis for the exemption of school lunch program procurement from the general provisions of the public bid law." However, the purchase of materials and supplies made by a School Food Authority is governed by the Louisiana Administrative Code, Title 28, Part XLIX, Chapter 15 (Bulletin 1196).
While school boards are subject to the Public Bid Law when contracting for public works and the Public Bid Law or Louisiana Administrative Code when making certain purchases of materials or supplies, our courts have held that contracts for services are not subject to the requirements of the Public Bid Law. See Wallace Stevens v. Lafourche Parish HospitalDistrict No. 1, 323 So.2d 794 (La. 1975); Lafourche Parish Water DistrictNo. 1 v. Carl Heck Engineers, Inc., 346 So.2d 769 (La.App. 1st Cir. 1977), writ denied, 349 So.2d 873 (La. 1977); Browning-Ferris, Inc. v.City of Monroe, 465 So.2d 882 (La.App. 2nd Cir. 1985), writ denied,467 So.2d 538 (La. 1985); Tiger Air Heat v. Jefferson Parish SchoolBoard, 832 So.2d 324 (La.App. 5th Cir. 2002), writ denied, 839 So.2d 35
(La. 2003); Regency Construction, Inc. v. Lafayette City-ParishConsolidated Government, 847 So.2d 796 (La.App. 3rd Cir. 2003); B CElectric, Inc. v. East Baton Rouge Parish School Board, 849 So.2d 616
(La.App. 1st Cir. 2003). Numerous Attorney General Opinions have expressed the same conclusion in response to inquiries on a wide variety of service contracts.
To the extent that a school board is making direct purchases of materials and supplies which relate to contracts for custodial, maintenance or student transportation services, such purchases must be made in compliance with the Public Bid Law. See La.R.S. 38:2212.1(A)(1)(a) and (b). When a contract involves the merger of services with the purchase of materials and supplies, a factual determination must be made as to whether the predominant or substantial component of the contract would be for the services provided or for the materials and supplies. See Atty. Gen Op Nos. 88-392 and 99-280.
If a contract has a substantial materials and supplies component compared to its services component, it is our opinion that the Public Bid Law would be applicable. If the predominant or substantial component of the contract in question is for the services provided, it is our opinion that the contract would be characterized as one for services and would not be subject to the requirements of the Public Bid Law.
I hope this opinion has sufficiently answered your inquiries. If I can be of further assistance to you, please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ______________________________ Katherine M. Whitney Assistant Attorney General
CCF, Jr.:KMW:lrs